IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAMIRO APONTE** <br> Plaintiff, <br><br> v. <br><br> **LM GENERAL INSURANCE COMPANY,** <br> Defendant. | CIVIL ACTION <br><br><br><br><br> NO.  24CV2357 |

<u>**MEMORANDUM OPINION**</u>

Defendant LM General Insurance Company ("LM General") has filed a Motion to Dismiss, Fed. R. Civ. P. 12(b)(6), Plaintiff Ramiro Aponte's Complaint, in which he alleges that the insurer denied his claim for uninsured motorist coverage in breach of its contractual duty of good faith and fair dealing and in violation of Pennsylvania's bad faith statute.  42 Pa. C.S. § 8371.  For the reasons that follow, LM General's Motion will be granted in part and denied in part.

**I.     BACKGROUND**[1]

On or about January 2, 2023, Aponte was involved in a car crash in Philadelphia, Pennsylvania, with another driver who lacked car insurance.  The crash left him with multiple "severe and permanent injuries," including a:

> cervical strain and sprain with radiculopathy, lumbar strain and sprain with radiculopathy, bilateral S-1 radiculopathy, thoracic strain and sprain, disc protrusion at C3-4, C4-5, C5-6 and C6-7, disc bulge at C2-3 and Ll-2, disc herniation at L5-S 1, acute posttraumatic sprain/strain bilateral knees, strain and sprain of the left shoulder, post-concussion syndrome with recurrent headaches.

When the accident occurred, Aponte was insured by LM General for "compensatory damages . . . because of 'bodily injury'; 1) [s]ustained by an 'insured'; and 2) [c]aused by an

---

[1] The below factual recitation is taken from Aponte's Complaint, well-pleaded allegations from which are taken as true at this stage.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

'accident'" involving "a motor vehicle with no liability insurance and self-insurance at the time of the loss."

In the days after the crash, Aponte's counsel sent LM General notice of a potential uninsured motorist claim. In November, having repeatedly updated LM General on the treatment for his injuries over the previous year, Aponte demanded $125,000 for his claim. LM General countered with an offer of $16,000 "based on the assertion that [he] was more predisposed than the general population to back injuries as a result of his height and weight" (according to the parties' correspondence, Aponte is 6' 8"). Seeking a more favorable settlement, Aponte offered to undergo an independent medical examination so that LM General "could ascertain the full extent of [his] injuries," but LM General has not taken him up on his offer. Nor has it asked Aponte to make a sworn statement about his injuries and their impact on his life—a statement that Aponte has said he is willing to provide.

Aponte filed this lawsuit, alleging that LM General's conduct constituted a breach of their insurance contract—specifically, a breach of the implied covenant of good faith and fair dealing—and bad faith under Pennsylvania law. 42 Pa. C.S. § 8371. He seeks the maximum payment allowable under his insurance policy—$150,000—plus consequential damages and punitive damages available under the bad faith statute.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere

2

conclusory statements, do not suffice." *Id.* (citation omitted).  When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

### III. DISCUSSION

#### A. Breach of Contract

Although LM General makes its Motion under Federal Rule of Civil Procedure 12(b)(6) which concerns "failure to state a <u>claim</u> upon which relief can be granted," (emphasis added), in asking the Court to dismiss "with prejudice, paragraphs 45 and 52 through 57, and sub-paragraph (b) of the Ad Damnum Clause of Count 1", and none of the other allegations that Plaintiff makes in support of his breach of contract claim, it is not asking for dismissal of the <u>claim</u> alleged in Count 1.  Properly construed, it is asking that the Court strike these paragraphs from the pleadings.  Such motion is more properly made under Federal Rule of Civil Procedure 12(f).  But nowhere in its motion does LM General refer to that rule or set forth the standards to determine such a request.  Accordingly, LM General's Motion, which was filed only under Rule 12(b)(6), will be denied in this respect.

#### B. Bad Faith

Pennsylvania's bad faith statute provides that:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

3

42 Pa. C.S. § 8371. A finding of "bad faith" requires "the plaintiff [to] present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017). The cause of action applies with equal force to an insurer's failure to investigate the facts of a claim or to communicate with the insured. *See Shaffer v. State Farm Mut. Auto. Ins. Co.*, 643 F. App'x 201, 204 (3d Cir. 2016) (not precedential); *Frog, Switch & Mfg. Co., Inc. v. Traveler's Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999); *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1142 (Pa. Super. 2006). "To constitute bad faith it is not necessary that the refusal to pay be fraudulent." *Grossi v. Travelers Personal Ins. Co.*, 79 A.3d 1141, 1148-49 (Pa. Super. 2013). Thus, the heightened pleading standard outlined in Federal Rule of Civil Procedure 9 does not apply. That said, "mere negligence or bad judgment is not bad faith." *Id.* at 1149; *see Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994).

LM General argues that Aponte's Complaint "merely expresse[s] his disagreement with the amount of [its] settlement offer" and thus does not plausibly allege bad faith. Indeed, while the Complaint contains several well-pleaded allegations that could help support a finding that LM General's payment offer lacked a reasonable basis, it does not plausibly allege that the insurer knew or recklessly disregarded that this was the case. *See Rancosky*, 170 A.3d at 365. To demonstrate LM General's knowledge of the unreasonableness of its offer, Aponte alleges that: (1) LM General received several letters detailing "medical records and reports concerning [his] condition;" (2) despite having that information, LM General nonetheless sent an unreasonably low settlement offer; and, (3) LM General declined the opportunity to receive a second opinion from an independent medical examiner.

4

These allegations do not plausibly add up to actual knowledge of or reckless disregard for the unreasonableness of the offer sent to Aponte. Indeed, *Grossi*, on which Aponte relies, is consistent with this conclusion. There, even though the insurer's claims adjuster had valued the plaintiff's claim at $1.8 million and his uninsured motorist policy covered up to $300,000, the company initially established loss reserves of only $1,000 because it considered the plaintiff's estimated lost future earnings "highly speculative." *Gross*, 79 A.3d at 1145-46. Crucially, the insurer "failed to ever increase its reserve or settlement offer, in complete disregard of subsequent medical reports, vocational reports and other documentation" that showed the claimant "had undergone seven surgeries" and "was still [in treatment] three years after the accident." *Id.* at 1149. Thus, the Superior Court affirmed the trial court's finding that the insurer had acted in bad faith in handling the plaintiff's underinsured motorist claim. *Id.* at 1163.

Here, in contrast, the Complaint does not allege any similar wholesale disregard of new information by LM General from which one plausibly could infer that the company knew or consciously ignored that its offer to Aponte was unreasonable. At most, the many letters from Aponte's counsel to LM General establish that, having received a slew of information about his condition, the insurer nonetheless made an unreasonably low settlement offer. There is no indication from the Complaint, however, that LM General already had valued Aponte's claim at $16,000 and was refusing to budge even as new, more detailed medical information came in. Instead, the correspondence indicates that LM General in fact relied on the information that Aponte shared in arriving at that figure. The insurer cited his "history of lumbar pain, protrusions, and radiculopathy" in addition to his size as a basis for the low offer.[2] In this way,

---

[2] "When the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). Thus, although LM General's correspondence with Aponte attached to his Complaint does not appear to reference his weight, the allegations in the Complaint on that issue control at this stage. *See id.* at 343. On the other hand, nothing in the

5

the Complaint alleges at most "mere negligence or bad judgment," but "not bad faith." *Id.* at 1149. Aponte's claim therefore will be dismissed without prejudice.

An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

_____
**WENDY BEETLESTONE, J.**

---

Complaint "contest[s]" LM General's statement that Aponte had a "history of lumbar pain, protrusions, and radiculopathy," so it can be considered at this stage. *See id.* (citing *Doe v. Univ. of Scis.*, 961 F.3d 203, 210 (3d Cir. 2020)).